# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| ALBEDO MANAGEMENT LLC ROTH 401(K) PLAN, JOSEPH HERMAN, and MICHAEL BEN-JACOB | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Albedo Management LLC Roth 401(K) Plan ("**Albedo**"), Joseph Herman ("**Herman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.   **INTRODUCTION**

1.   Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.   This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.   The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.   At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.      The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Albedo, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

     b.     The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

     c.     The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 68,907,138, or at least $10,426,000 (US)[2], plus interest.

## II.    **JURISDICTION & VENUE**

14.     Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.  This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.     PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Albedo is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Albedo is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Albedo purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Herman is a citizen of the State of New York.  Defendant Herman was the sole participant in Defendant Albedo.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Albedo.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Albedo in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.      **The Fraudulent Scheme**

26.      As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.      **The Fraudulent Refund Claims Process**

27.      The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.      The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.      Each of the claimants provided the following documentation to SKAT through their designated agents:

a.      a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.      a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.      the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.      the amount of the tax refund claim;

iii.      a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.    the bank account to which SKAT should pay the claim;

        c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

        d.    a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

        e.    in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.    It was SKAT's practice to pay claims that included the required supporting documentation.

32.    SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

        **2.    The Role of the Claimants**

33.    Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.    Each of the claimants, including Defendant Albedo, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.    As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims. Defendant Albedo represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Albedo's claims.

36.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. Defendant Albedo represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies. Defendant Albedo made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,907,138, or at least $10,426,000 (US). These refund claims were submitted to SKAT on the following dates:  May 22, 2015 and May 29, 2015.

38.     In fact, Defendant Albedo did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.     Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Albedo on July 6, 2015.

40.     On information and belief, Defendant Herman caused Defendant Albedo's fraudulent claims to be submitted to SKAT. Defendant Herman exerted control over Defendant Albedo as the plan's sole participant, and used this control to commit the fraud on SKAT.

41.     Defendant Herman was the sole participant in three different pension plans that submitted fraudulent tax refund claims to SKAT. For one of these claimants, non-party Fairlie Investments LLC Roth 401(K) Plan, Defendant Herman also served as the plan's Authorized Representative.

### 3. The Role of the Claimants' Authorized Representatives

42.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.     Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Albedo a "Special Power of Attorney" dated January 6, 2015, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Albedo's] name for which [Albedo is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Albedo is] entitled on [Albedo's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Albedo.

44.     As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Albedo's claims to SKAT.

45.     Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Albedo.  Six of these claimants, including Defendant Albedo, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.     In addition to Defendant Albedo, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4. The Role of the Payment Agents

47.     The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.     By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.     With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.     In connection with each Claim Form, the Payment Agent:

  a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

  b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

  c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

  d.     requested that SKAT pay the claim to its bank account.

51.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5. The Role of the Broker-Custodians

52.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

11

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.     By way of example, with respect to Defendant Albedo, one example of an "Income Advice":

    a.     is made out by Old Park Lane Capital PLC;

    b.     is dated December 9, 2014;

    c.     purports to certify Defendant Albedo's ownership of 1,085,287 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

    d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.     Defendant Albedo never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

#### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 68,907,138, or at least $10,426,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.     SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.     SKAT's mistaken belief was material to its decision to pay the claims.

71.     SKAT suffered a loss as a result of its mistaken payments.

72.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.     SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.     This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.     By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.     SKAT suffered a loss because of the Defendants' unjust enrichment.

77.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.    SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.    As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.    SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.    Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.    Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Albedo to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.     Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.      SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 68,907,138, or at least $10,426,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.     For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.     For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.     For Counts I and II, punitive damages.

4.     The costs of this action.

5.     All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN, | Civil Action No. _____ |
| Plaintiff, | Honorable _____ |
| vs. | February 26, 2019 |
| ALBEDO MANAGEMENT LLC ROTH 401(K) PLAN, JOSEPH HERMAN, and MICHAEL BEN-JACOB | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants Albedo Management LLC Roth 401(K) Plan ("**Albedo**"), Joseph Herman ("**Herman**"), and Michael Ben-Jacob ("**Ben-Jacob**") as follows:

I.  **INTRODUCTION**

1.  Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.  This case stems from a fraudulent tax refund scheme to deceive SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.  The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded

---

1.  At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.       The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.       The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period of 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including Defendant Albedo, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.       On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.  Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by

misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.     As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.     On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.  At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**").  The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions.  At least three individuals have been criminally charged by SØIK.

9.     The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

      a.     The Authorized Representatives of the claimants, such as Defendant Ben-Jacob, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and authorized representatives; and

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims by the Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 68,907,138, or at least $10,426,000 (US)[2], plus interest.

## II.    **JURISDICTION & VENUE**

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on February 11, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.6086 DKK.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.   PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant Albedo is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 250 West 55th Street, New York, NY 10019, USA.  On information and belief, each participant, or member, of Defendant Albedo is a citizen of a State of the United States.  At all times material to the allegations in this Complaint, Defendant Albedo purported to be a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and resident of the United States of America for purposes of U.S. taxation.

18.     Defendant Herman is a citizen of the State of New York.  Defendant Herman was the sole participant in Defendant Albedo.

19.     Defendant Ben-Jacob is a citizen of the State of New York.  At all times material to the allegations in this Complaint, Defendant Ben-Jacob served as the Authorized Representative for Defendant Albedo.  At times material to the allegations in this Complaint, Defendant Ben-Jacob worked at a law firm whose offices were located at 250 West 55th Street, New York, NY 10019, the same address listed by Defendant Albedo in its fraudulent refund claims to SKAT.

## IV.   FACTUAL ALLEGATIONS

### A.   The Danish Withholding Tax System

20.      Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

21.      Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

22.      Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

23.      A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

24.      SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

25.      It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

B.    **The Fraudulent Scheme**

26.    As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.   The respective roles of each of these participants are described in further detail in paragraphs 33 through 54 below.

1.    **The Fraudulent Refund Claims Process**

27.    The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Acupay System LLC ("**Acupay**"), each of which submitted claims by mail or by email transmissions.

28.    The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

29.    Each of the claimants provided the following documentation to SKAT through their designated agents:

a.    a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

b.    a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

i.    the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

ii.    the amount of the tax refund claim;

iii.    a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

7

iv.      the bank account to which SKAT should pay the claim;

c.      a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

d.      a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

30.      The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

31.      It was SKAT's practice to pay claims that included the required supporting documentation.

32.      SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.      The Role of the Claimants

33.      Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

34.      Each of the claimants, including Defendant Albedo, made withholding tax refund claims through their Payment Agents, as described in paragraph 29, above.

35.      As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the

claimants with respect to the dividend withholding tax refund claims.  Defendant Albedo represented that Defendant Ben-Jacob was its Authorized Representative and agent who had authority to act on its behalf with respect to Defendant Albedo's claims.

36.    As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.  Defendant Albedo represented that non-party Acupay was its agent and had authority to act on its behalf with respect to its claims.

37.    Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Defendant Albedo made fifteen (15) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,907,138, or at least $10,426,000 (US).  These refund claims were submitted to SKAT on the following dates:  May 22, 2015 and May 29, 2015.

38.    In fact, Defendant Albedo did not hold the shares it represented to SKAT that it owned, and had no dividend tax withheld.

39.    Based on the false refund claims listed in paragraph 37, SKAT made payments to Defendant Albedo on July 6, 2015.

40.    On information and belief, Defendant Herman caused Defendant Albedo's fraudulent claims to be submitted to SKAT.  Defendant Herman exerted control over Defendant Albedo as the plan's sole participant, and used this control to commit the fraud on SKAT.

41.    Defendant Herman was the sole participant in three different pension plans that submitted fraudulent tax refund claims to SKAT.  For one of these claimants, non-party Fairlie Investments LLC Roth 401(K) Plan, Defendant Herman also served as the plan's Authorized Representative.

### 3.   The Role of the Claimants' Authorized Representatives

42.   Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

43.   Defendant Ben-Jacob executed at the direction of, and on behalf of, Defendant Albedo a "Special Power of Attorney" dated January 6, 2015, that granted to non-party Acupay authority "to pursue and file for reductions in rates of tax withholding in [Albedo's] name for which [Albedo is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [Albedo is] entitled on [Albedo's] behalf."  Defendant Ben-Jacob described himself as the "Attorney-in-fact" of Defendant Albedo.

44.   As a result of the executed Special Power of Attorney, Payment Agent Acupay also agreed to act for Defendant Ben-Jacob and be subject to his direction and control with respect to Defendant Albedo's claims to SKAT.

45.   Defendant Ben-Jacob signed Power of Attorney documents as the Authorized Representative for at least nine of the 277 U.S. claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index and that fraudulently requested tax refunds from SKAT, including Defendant Albedo.  Six of these claimants, including Defendant Albedo, listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in their fraudulent refund claims to SKAT.

46.   In addition to Defendant Albedo, at least 33 other claimants that pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index also listed Defendant Ben-Jacob's office addresses of 425 Park Avenue, New York, NY 10022 or 250 West 55th Street, New York, NY 10019 in the fraudulent tax refund claims they submitted to SKAT.

### 4.    The Role of the Payment Agents

47.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

48.    By means of the Power of Attorney described in paragraphs 42-43 above, each claimant and authorized representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

49.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 29 above.

50.    In connection with each Claim Form, the Payment Agent:

a.    provided its email address as the contact address for the claimant on whose behalf it was acting;

b.    signed and stamped the form, and stated it was applying on behalf of the claimant;

c.    enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.    requested that SKAT pay the claim to its bank account.

51.    As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

### 5.    The Role of the Broker-Custodians

52.    Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to

show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

53.     By way of example, with respect to Defendant Albedo, one example of an "Income Advice":

    a.     is made out by Old Park Lane Capital PLC;

    b.     is dated December 9, 2014;

    c.     purports to certify Defendant Albedo's ownership of 1,085,287 shares in Coloplast-B (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

    d.     states an International Securities Identification Number ("**ISIN**") for Coloplast-B shares as "DK0060448595".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

54.     Defendant Albedo never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

55.     SKAT repeats and realleges paragraphs 1 through 54 above as if fully set forth herein.

56.     Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 29-30, 37, and 52 through 54 to support claims for withholding tax refund payments.

57.     Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

58.     In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 68,907,138, or at least $10,426,000 (US), and thereby suffered damages of that amount, plus interest.

59.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

<u>**COUNT II**</u>

**(Aiding and Abetting Fraud – Against All Defendants)**

60.     SKAT repeats and realleges paragraphs 1 through 59 above as if fully set forth herein.

61.     As alleged above, a massive fraud was perpetrated on SKAT by the claimants, the Authorized Representatives, the Payment Agents, and/or other non-parties.

62.     As alleged in paragraphs 26 through 54 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

63.     The Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

64.     The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 26 through 54 above.

65.     As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

66.     Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Payment By Mistake – Against All Defendants)

67.  SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

68.   This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

69.  SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken understanding that the Defendants had submitted valid claims with valid supporting documentation.

70.  SKAT's mistaken belief was material to its decision to pay the claims.

71.  SKAT suffered a loss as a result of its mistaken payments.

72.  The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT IV

### (Unjust Enrichment – Against All Defendants)

73.  SKAT repeats and realleges paragraphs 1 through 72 above as if fully set forth herein.

74.  This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

75.  By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

76.  SKAT suffered a loss because of the Defendants' unjust enrichment.

77.     The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT V

### (Money Had & Received – Against All Defendants)

78.     SKAT repeats and realleges paragraphs 1 through 77 above as if fully set forth herein.

79.     As a result of their fraudulent scheme, Defendants received proceeds from withholding tax refunds to which they were not entitled.

80.     It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## COUNT VI

### (Negligent Misrepresentation – Against All Defendants)

81.     SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82.     Defendants had a duty, as a result of their submission of claims for withholding tax refund payments, to provide truthful, accurate, and complete information to SKAT in all material respects concerning their applications for such payments.

83.     Defendants made material misstatements described in paragraphs 29-30, 37, and 52 through 54 above in connection with every withholding tax refund claim submitted on behalf of Defendant Albedo to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

84.    Defendants' material misstatements were intended to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

85.    SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 68,907,138, or at least $10,426,000 (US), plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.    For Counts I, II and VI, for fraud, aiding and abetting fraud, and negligent misrepresentation, the damages sustained by SKAT as a result of the Defendants' wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.    For Counts III, IV, and V, for payment by mistake, unjust enrichment, and money had and received, the damages sustained or the amounts by which the Defendants were paid by mistake or unjustly enriched, or by which the Defendants received money to which they were not entitled, plus pre-judgment interest, fees, costs and expenses.

3.    For Counts I and II, punitive damages.

4.    The costs of this action.

5.    All other and further relief that is just and proper.

**JURY DEMAND**

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,


HUGHES HUBBARD & REED LLP


 s/ Sarah. L. Cave
William R. Maguire
Marc A. Weinstein
Sarah L. Cave
John T. McGoey
One Battery Park Plaza
New York, New York  10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
Bill.maguire@hugheshubbard.com
Marc.weinstein@hugheshubbard.com
Sarah.cave@hugheshubbard.com
John.mcgoey@hugheshubbard.com

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)